PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROCCO L. ROGERS, | ) | CASE NO. 4:25-CV-00120 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| COMMISSIONER OF | ) | **MEMORANDUM OF** |
| SOCIAL SECURITY, | ) | **OPINION AND ORDER** |
| | ) | [Resolving ECF Nos. 1, 14, 15] |
| Defendant. | ) | |

## I. INTRODUCTION

Rocco Rogers applied for disability benefits with the United States Social Security Administration. *See* ECF No. 1. Deeming him not disabled and suited for certain work, the Commissioner denied the application and an appeal therefrom. Plaintiff seeks review of that decision under 42 U.S.C. § 405(g). On assignment under Local Rule 72.2(b), the magistrate judge weighed the briefings and issued a Report and Recommendation ("R&R") to affirm the denial. *See* ECF Nos. 8, 11, 13, 14. Plaintiff contests that determination. *See* ECF No. 15. For the reasons herein, the Court overrules Plaintiff's Objections, adopts the R&R, and affirms the Commissioner's decision.

(4:25-CV-00120)

## II.  BACKGROUND

### A.  *Facts* [1]

Plaintiff is twenty-five years old and lives in Youngstown, Ohio, with his mother, brother, and stepfather.  *See* ECF No. 14 at PageID #: 957.  He has a high school diploma, a driver's license, and a brief work history in retail and food delivery.  *See* ECF No. 14 at PageID #: 957-58.  He has been unemployed since 2021 when, due to gastrointestinal and pelvic floor disorders that caused him to became "sick everyday" and unable to "physically do most activities."  ECF No. 14 at PageID #: 956.  His alleged symptoms range from constipation to overwhelming rectal and abdominal pain leaving him tethered to the restroom for hours at a time.  *See* ECF No. 14 at PageID ##: 958–59.  A January 2022 scan revealed stool buildup in the digestive tract, but no bowel obstruction.  *See* ECF No. 14 at PageID #: 963. An endoscopy the following month revealed mild gastritis with no significant pathology.  *See* ECF No. 14 at PageID #: 963. Simultaneous pelvic floor testing indicated severely high muscle tone, substandard pelvic floor descent, and abnormal coordination.  *See* ECF No. 14 at PageID #: 964.

Throughout the spring of 2022, Plaintiff attended physical therapy and reported ongoing painful bowel movements and nausea with some incremental improvement.  *See* ECF No. 14 at PageID ##: 964–66.  Imaging that Summer confirmed abnormal pelvic floor movement consistent with dyssynergia—a functional disorder in which pelvic muscles contract rather than relaxing during defecation.  *See* ECF No. 14 at PageID #: 966-67.  Concurrent testing revealed

---

[1] The Court adopts the magistrate judge's factual and procedural summary and incorporates it by reference.  *See* ECF No. 14.  What follows is a summary of the facts most pertinent to the objections under review.

2

(4:25-CV-00120)

abnormal sphincter strength and gastrointestinal pressure well above normal ranges.  *See* ECF No. 14 at PageID #: 967.  In November 2022, Plaintiff received Botox injections to the internal anal sphincter but reported continued pain.  *See* ECF No. 14 at PageID #: 968.  By March of 2023, he was barely leaving the house and taking laxatives and suppositories daily to alleviate the pain and pelvic pressure.  *See* ECF No. 14 at PageID #: 968-69.  A May 2023 behavioral health consultation recommended hypnotherapy and cognitive behavioral therapy to address the psychological factors contributing to his physical symptoms.  *See* ECF No. 14 at PageID #: 969.

In July 2023, Plaintiff sought surgical second opinions, and a concurrent consultation revealed full-thickness rectal prolapse.  *See* ECF No. 14 at PageID #: 969.  After finally obtaining psychiatric clearance—a prerequisite for treatment that his physicians had long stressed—he elected to proceed with a diverting loop ileostomy on December 1, 2023.  *See* ECF No. 14 at PageID ##: 969–70. Throughout, Plaintiff suffered from depression and anxiety intertwined with and exacerbating his physical condition.  *See* ECF No. 14 at PageID #: 962, 967, 969.

### B.  *Proceedings*

Plaintiff applied for SSA benefits on February 16, 2022 with an onset date of November 20, 2021.  *See* ECF No. 6 at PageID #: 43.  He claims disability *via*: (1) a stomach virus; (2) a bowel virus; (3) digestive medical issues; (4) depression, and (5) anxiety.  The SSA denied the application both initially and on reconsideration.  *See* ECF No. 6 at PageID ##: 110–11, 121, 126, 141.  Plaintiff requested and received an ALJ hearing on September 14, 2023.  *See* ECF No. 6 at PageID ##: 74–104. Three months later, the ALJ issued a decision finding Plaintiff not disabled.  *See* ECF No. 6 at PageID ##: 14–38.  Plaintiff sought SSA Appeals Council review, which re-rendered the denial on December 16, 2024.  *See* ECF No. 6 at PageID # 1.

3

(4:25-CV-00120)

Having exhausted his administrative remedies, Plaintiff sued in federal court on January 23, 2025.  *See* ECF No. 1.  He alleges one assignment of error: that "[t]he ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to explain how Plaintiff can perform work on a regular and continuing basis despite his severe impairment of pelvic floor dysfunction."  ECF No. 13 at PageID #: 950.  He asks the Court to find him disabled and award him benefits outright or, in the alternative, remand to the SSA for further proceedings. *See* ECF No. 1 at PageID #: 2.

On January 23, 2025, the Court referred the case to Magistrate Judge Jennifer Dowdell Armstrong.  *See* ECF No. 5.  The magistrate judge issued an R&R on September 19, 2025 recommending the Court affirm the Commissioner's denial.  *See* ECF No. 14.  The R&R rejects Plaintiff's sole assignment of error—that the ALJ failed to adequately explain how his severe pelvic floor dysfunction was accounted for in the RFC—finding the ALJ's reasoning was sufficiently traceable and supported by substantial evidence.  More specifically, the R&R determined that (a) a severe impairment does not automatically require corresponding physical work limitations and (b) the ALJ permissibly found Plaintiff's pelvic floor dysfunction severe only in combination with his mental health condition.  It also rejected Plaintiff's contention that the ALJ was required to obtain additional medical expert testimony because, *inter alia,* no medical source in the record opined on functional limitations greater than those reflected in Plaintiff's residual functional capacity ("RFC").  Ultimately, the R&R concluded the decision fell within the ALJ's discretion because the ALJ had carefully weighed the medical record, consultant opinions, Plaintiff's daily activities, and testimonial inconsistencies.

(4:25-CV-00120)

## III. LAW

### A. *Social Security*

Disability benefits applications under the Social Security Act are reviewed by an Administrative Law Judge ("ALJ") in a five-step query.  *See* 20 C.F.R. § 416.920; *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006) (*en banc*).  First, whether the claimant was engaged in "substantial gainful activity" at the time of the application.  *See* 20 C.F.R. § 416.920(b).  Second, whether the claimant suffers from a "severe impairment" or combination of impairments.[2]  *See* 20 C.F.R. § 416.920(c).  Third, whether the claimant's condition meets or equals a listed impairment under the regulation.  *See* 20 C.F.R. § 416.920(d).  Fourth, whether the claimant's impairment prevents him from executing past relevant work.  *See* 20 C.F.R. § 416.920(e).  And fifth, whether—based on his age, education, and work history—the claimant can perform other work in the national economy.  *See* 20 C.F.R. § 416.920(g).

In steps one through four, the burden of producing evidence of disability lies with the claimant.  *See* 20 C.F.R. § 404.1512(a); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  At step five, the burden shifts to the SSA.  *See Walters*, 127 F.3d at 529. Before moving from step three to step four, the ALJ must assess the claimant's RFC[3]—that is, the "most" the claimant can do on a sustained basis despite their impairments considering all

---

[2] A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990) (quoting 20 C.F.R. §§ 404.1520(c), 416.920(c)).

[3] "A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner." *Golden v. Berryhill*, No. 1:18CV00636, 2018 WL 7079506, at *17 (N.D. Ohio Dec. 12, 2018), report and recommendation adopted sub nom, 2019 WL 415250 (N.D. Ohio Feb. 1, 2019).

(4:25-CV-00120)

functional limitations caused by the claimed conditions and symptoms.  *See* 20 C.F.R. §§ 416.920(e), 416.945(a)(1).  An ALJ is "charged with the responsibility of determining the RFC based on [their] evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). "[The ALJ] must give some indication of the evidence upon which [the ALJ is] relying, and may not ignore evidence that does not support [the ALJ's] decision, especially when that evidence, if accepted, would change [the] analysis." *Golden*, 2018 WL 7079506, at *17.

### B.  *Review*

A district court's review of a disability determination is "is limited to determining whether the [ALJ]'s decision is [(1)] supported by *substantial evidence* and [(2)] was made pursuant to *proper legal standards*." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)) (emphasis added).  Such review is deferential yet must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

The substantial evidence standard is "not high[,]" but requires the district court to review administrative record and determine whether it contains enough evidence to support the ALJ's factual findings.  *See Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It requires "more than a mere scintilla" of "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion." *Id.*  The Court does not reassess *de novo*; if there is substantial evidence in support, it must defer to the ALJ's decision.  *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *TNS, Inc. v. NLRB, 296 F.3d 384, 395 (6th Cir. 2002)*.

6

(4:25-CV-00120)

The second level of review requires a district court to determine whether the ALJ applied proper legal standard in their determination. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Incorrect application facially warrants remanding. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence . . . a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

## C. *Referral*

A district court may assign a disability benefits appeal to a magistrate judge for factual findings and legal proposals *via* R&R. *See* 28 U.S.C. 636(b)(1)(B). The court may accept, reject, or modify the R&R, receive additional evidence, or return it to the magistrate judge with clarifying guidance. *See* 28 U.S.C. § 636(b)(1)(C). Absent specific objections, a district court may adopt the R&R without in-depth review. *See Peretz v. United States*, 501 U.S. 923, 939 (1991). On receipt of the R&R, the litigants have fourteen days to file any objections. *See* Fed. R. Civ. P. 73(b)(2); *id.* A district court reviews *de novo* only those portions of the R&R specifically objected.[4] *See* 28 U.S.C. § 636(b)(1)(C); *id.* Failure to timely object "constitute[s] a waiver of subsequent review, absent a showing of good cause[.]" Local Rule 72.3(b); *see* Fed. R. Civ. P. 72(b). Objections must be clear, specific, and direct the court's attention to concrete

---

[4] *See*, *e.g.*, *Bulls v. Potter*, No. 5:16-CV-02095, 2020 WL 870931, at *1 (N.D. Ohio Feb. 21, 2020) (citing Fed. R. Civ. P. 72(b)(2)) (noting objections "must be specific in order to trigger *de novo* review") (cleaned up); *Spring v. Harris*, No. 4:18-CV-2920, 2022 WL 854795, at *4 (N.D. Ohio Mar. 23, 2022) (quoting *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (N.D. Ohio 2022)) ("An objection that does nothing more than state a disagreement with a [magistrate judge]'s suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context") (cleaned up).

7

(4:25-CV-00120)

contentions with the R&R.[5]  *See Thomas v. Arn*, 474 U.S. 140, 147 (1985); *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

## IV.  DISCUSSION

Nominally, Plaintiff presents a single objection to the R&R: that "[t]he magistrate judge erred in evaluating the Agency's own definition of severe impairment and whether or not severe impairments limit the ability to work."  ECF No. 15 at PageID #: 988 (cleaned up).  Closer scrutiny reveals a second objection: that the magistrate judge engaged in impermissible *post hoc* rationalization to justify the ALJ's decision.  *See* ECF No. 15 at PageID ##: 989–92.  The two objections are addressed and resolved separately herein.

### A.  *Objection I*

Plaintiff's first objection rests on the premise that the ALJ's severity finding and RFC determination are logically incompatible.  *See* ECF No. 15 at PageID #: 989.  He claims that, because the ALJ expressly invoked Titles II and XVI: Med. Impairments That Are Not Severe, SSR 85-28 (1985) and found that Plaintiff's pelvic floor dysfunction "significantly limited [his] ability to perform basic work activities[,]" a no-limitation RFC necessarily contradicts that finding.  ECF No. 15 at PageID #: 989.

The Court is unpersuaded.  The R&R rightly explains that the finding of a severe impairment at step two does not presuppose a later RFC outcome.  *See* ECF No. 14 at PageID #: 976.  Courts in the Northern District of Ohio consistently hold the same, as "[t]he presence of a

---

[5] *See Potter*, 2020 WL at *2 ("A party disappointed with the [magistrate judge]'s recommendation has a duty to pinpoint those portions of the [R&R] that the district court must specially consider.") (cleaned up).  As a result, a vague objection to the entire report that "attempts to support [a] general objection with an exact recitation of arguments that were previously raised before the [magistrate judge]" does not meet the specificity requirement that triggers *de novo* review.  *Id.* (cleaned up).

8

(4:25-CV-00120)

severe impairment alone does not automatically warrant an RFC limitation if it does not impact a claimant's ability to work." *Kubas v. Comm'r of Soc. Sec.*, No. 1:22-CV-00856, 2023 WL 4744279, at *8 (N.D. Ohio July 25, 2023) (collecting cases). The inquiries serve separate functions: a finding of severity in step two establishes only that an impairment clears the threshold of medical significance—it does not mandate functional consequences in a subsequent RFC determination.[6] *See Thornton v. Saul*, No. 4:20-CV-01420-JRA, 2021 WL 3934332, at *11 (N.D. Ohio June 21, 2021). The record establishes that Plaintiff's most significant functional impairments are the anxiety and psychological distress both exacerbating and produced by his gastrointestinal and pelvic floor issues, rather than any inherent physical limitations therefrom. *See* ECF Nos. 6 at PageID #: 21–24; 14 at PageID ##: 977–78. Therefore, the ALJ did not err in evaluating whether Plaintiff's "severe impairment" limited his ability to work.

### B. *Objection II*

Plaintiff's second objection mischaracterizes the R&R as supplying *post hoc* rationalization the ALJ failed to provide. *See* ECF No. 15 at PageID #: 989–90. The Court disagrees. The R&R does not construct new justifications to girder the ALJ's decision. Rather, it traces the reasoning articulated holistically in the record. The ALJ's evidentiary analysis related to Plaintiff's pelvic floor dysfunction is considerable. *See* ECF No. 6 at PageID ##: 46–63. Therein, the ALJ articulated concrete reasons why Plaintiff's pelvic floor condition does not, by

---

[6] Plaintiff contends that the "significantly limits" language is an affirmative functional determination for the RFC. *See* ECF No. 15 at PageID #: 989. Again, this argument conflates two otherwise distinct steps, as a severity finding under Titles II and XVI: Med. Impairments That Are Not Severe, SSR 85-28 (1985) is merely a threshold determination independent of the RFC.

(4:25-CV-00120)

itself, produce independent work-related limitations sufficient for a finding of disability.  *See*
ECF No. 6 at PageID #: 52–59.

First, the ALJ found that "prior to initiation of pelvic floor physical therapy sessions, the objective medical evidence is not consistent with the alleged intensity of pelvic and abdominal pain or its functionally limiting effects on exertional, including sitting for continuous periods, and other physical abilities."  ECF No. 6 at PageID #: 53.  Second, the ALJ found that Plaintiff showed meaningful improvement from physical therapy:

> A mid-May 2022 reevaluation showed improvement in "almost normal muscle tone" within just two months of sessions, improving stool consistency, some independent bowel movements without needing to use enema, and improved functional score (Ex. 6F/3,5). Progress towards treatment goals and tolerance of treatments was rated as "good," and continued in-office physical therapy care was recommended.

ECF No. 6 at PageID ##: 53–54.  Third, the ALJ found it significant that Plaintiff's treating physicians consistently recommended physical therapy and psychiatric treatment as the most appropriate course of action, while specifically counseling against more aggressive intervention until his anxiety was addressed:

> Only in relation to a psychological overlay of these symptoms and anxiety and depression noted by several of [Plaintiff's] physicians is the pelvic floor dysfunction considered "severe" by contributing to significant limitations in work-related mental abilities.

ECF No. 6 at PageID #: 56.  Fourth, the ALJ noted that Plaintiff had not pursued medication to address his allegedly constant and intense pain, thereby undercutting the consistency and credibility of his complaints:

> . . . the extant chronology of 2022-2023 medical evidence contains repeated indications that more conservative treatments, especially pelvic floor physical therapy sessions at least when consistently attended in the office setting, have been more beneficial than alleged in written reports and testimony connected with these applications

10

(4:25-CV-00120)

> for disability benefits. Moreover, the lower digestive tract symptoms and associated pelvic/abdominal pain have not been associated with significant objective abnormalities shown on the various diagnostic tests discussed above or with signs on physical examinations of that region. The late 2022 transit study also clearly shows better motility and ability to evacuate than alleged and presented to the various digestive disease specialists. There has also been minimal to no pursuit of medication to address the allegedly constant and intense pain, and no explanation is offered for this lack of treatment directed at reducing pain.

ECF No. 6 at PageID #: 56.  Finally, as the R&R accurately noted, the ALJ considered the extent to which Plaintiff's daily activities were inconsistent with his alleged physical limitations.  *See* ECF No. 14 at PageID #: 985.

Plaintiff's "cherry-picking" argument fails because the ALJ explicitly acknowledged the abnormal objective findings and weighed them against the broader record—a function of the agency, not the Court.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  His *Deskin* argument is likewise unpersuasive because that case is non-binding, widely criticized, and cuts against the Sixth Circuit's caution against tying physical diagnoses to RFC determinations.  *See Nicol v. Comm'r. of Soc. Sec.*, No. 4:25-CV-0513-BYP, 2026 WL 304408, at *12 (N.D. Ohio Feb. 5, 2026); *Carr v. Comm'r of Soc. Sec.*, No. 5:23-CV-00187-BMB, 2024 WL 1556398, at *11 (N.D. Ohio Jan. 8, 2024) ("A review of Sixth Circuit caselaw supports a finding that *Deskin* is not consistent with governing precedent"); *Winans v. Comm'r of Soc. Sec.*, No. 5:22-CV-01793, 2023 WL 7622634, at *4 (N.D. Ohio November 15, 2023) ("*Deskin* is a non-binding district court decision that conflicts with the regulations and Sixth Circuit case law . . . By requiring an ALJ to secure a medical opinion whenever the record does not contain such an opinion, subject to only limited exceptions, *Deskin* places a higher burden on the ALJ than the Sixth Circuit does.")

11

(4:25-CV-00120)

The question on review is not whether a different ALJ might have reached a different determination; it is whether substantial evidence supports the result the ALJ reached.  *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  It does, and the R&R correctly identifies that sufficiency.

## V.  CONCLUSION

The ALJ carefully reviewed an extensive record, weighed Plaintiff's subjective complaints against objective findings and documented daily activities, and permissibly concluded that Plaintiff's ailments did not independently produce physical limitations precluding all work. Therefore, the Court overrules Plaintiff's objections, adopts the R&R, and affirms the Commissioner's decision to deny disability benefits.


IT IS SO ORDERED.


March 20, 2026 | /s/ Benita Y. Pearson
Date | Benita Y. Pearson
| United States District Judge

12